IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **TenX Biopharma, Inc.,** | : | |
| | : | |
| Debtor. | : | Case No. 10-18968 (JKF) |
| _____ | | |

# **OPINION**

Before the Court is an issue raised in the First Omnibus Objection to Proof of Claim ("Omnibus Objection") filed by the Debtor TenX Biopharma, Inc. (the "Debtor" or "TenX"). In the Omnibus Objection, the Debtor objected, *inter alia*, to the proof of claim filed by Gardiner Smith ("Smith"). All matters relating to the Debtor's objection to Smith's Proof of Claim were amicably resolved except for the issue of whether Smith is entitled to $250,000 in severance pursuant to his employment contract.[1]

An evidentiary hearing ("Hearing"), at which Smith appeared *pro se*, was held on this matter on February 21, 2012. At the Hearing, the Court was unpersuaded by Smith's arguments that he had been actually terminated but agreed to take the matter under advisement to consider whether Smith may have been constructively terminated

---

[1] The Debtor resolved the objections which it raised in its Omnibus Objection, except for claims for severance pay, and submitted an agreed upon order to the Court for approval. See Certification of Counsel Regarding Agreed Upon Order on Debtor's First Omnibus Objection to Claims, Docket Entry No. 443. The Court signed the agreed upon order on January 4, 2012. See Order, dated January 4, 2012, Docket Entry No. 446. Moreover, the Court entered a consensual Order, dated June 22, 2011, which resolved all post-petition administrative and gap claims for ten employees, including Smith. See Order, dated June 22, 2011, Docket Entry No. 226.

when the Debtor ceased paying him. The Court directed the parties to file post-hearing briefs on the issue of construction termination, which they did.

Subsequently, the Court spent further time reviewing this matter. The Court re-read the transcript of this matter and researched the legal issues at hand. Importantly, the Court also discovered, when viewing matters on the bankruptcy docket, that TenX had filed a document on November 12, 2010, entitled Objection of TenX Biopharma, Inc., to Emergency Motion for Appointment of Trustee and Request for Expedited Hearing ("Objection to Appointment of Trustee), wherein TenX specifically and unequivocally stated that it <u>had</u> <u>terminated</u> Smith's employment. Significantly, this document bears the name of the same attorney who vigorously argued at the Hearing that TenX <u>never</u> <u>terminated</u> Smith. Notably, the attorney never mentioned that the Debtor had taken the completely opposite position in the Objection to Appointment of Trustee.

Accordingly, after conducting a full review of this matter, the Court denies the Debtor's objection to Smith's claim for severance and rules that Smith is entitled to severance in the amount of $125,000.

**BACKGROUND**

A. The Debtor's Employment Agreement

TenX and Smith entered into an Executive Employment Agreement ("Employment Agreement"),[2] dated February 1, 2010, providing that Smith would be employed by TenX as its Chief Executive Officer ("CEO") for a one year term ending

---

[2] According to the Choice of Law provision in the Employment Agreement, it is "governed by, and enforced according to the laws of the State of Delaware[.]" Id. ¶ 11.

2

February 1, 2011, with an annual base salary of $250,000.  See Exhibit RD 1 (the Employment Agreement).

In accordance with paragraph 4 of the Employment Agreement,[3] the term of Smith's employment could be extended annually for one year. There is no evidence in the record nor does Smith contend that the term of his Employment Agreement was extended beyond its initial one year term.[4]

According to Paragraph 6(a) of the Employment Agreement, in the event that Smith was terminated without cause, he was entitled to continued salary payments ("Severance") for a period of one year, except if he accepted a full-time position, then the period ended upon such acceptance but, in no event, would the period of Severance be reduced to less than six months.  Id. ¶ 6(a).  The Debtor's obligation to pay Severance, however, was conditioned in Paragraph 6(a) of the Employment Agreement upon Smith's delivery to the Debtor of a "release of claims."  Id.  Notably, in the event that Smith resigned or was terminated for cause by the Debtor, then the

---

[3] Paragraph 4 provided as follows:

> 4.  Extension of Term of Employment.  The Board of Directors or a committee designated by the Board of Directors of the Company shall review this Agreement at least annually, and may, with the approval of Employee, extend the term of this Agreement annually for additional one (1) year periods.

Id. ¶ 4.

[4] Smith testified that, while he was working post-petition as the Chief Executive Officer of the Debtor, he was doing so pursuant to the Court's directive and not pursuant to his Employment Agreement.  Transcript, dated February 21, 2012 ("Tr.") at 7, 14, 22-23.  This testimony is consistent with the conclusion that Smith's Employment Agreement was not renewed beyond its initial one year term.

Debtor had no obligation to pay any Severance to Smith pursuant to Paragraph 6(b) or Paragraph 6(c), respectively.[5]

---

[5] Paragraph 6 which contains all of these provisions, states, in pertinent part:

> Employee's employment shall be terminated . . . upon the occurrence of any one or more of the following events.
>
> (a) <u>Termination Without Cause</u>. Company's provision of *written notice* terminating employment hereunder without cause for any lawful reason or for no reason. Upon such Termination of Employment, Employee shall have a Separation of Service on the date of Company's provision of such *written notice* and Company's sole obligation shall be:
>
> > (i) to continue paying Employee, at a rate equal to Employee's salary at the time of termination and at the same time and in the same manner as Employee would have received such Salary if termination had not taken place, for a period of (1) year, provided if the Employee accepts full time employment subsequent to such termination the period will end upon such acceptance, provided in any event such period will not be reduced to less than six (6) months.
>
> * * *
>
> provided, however, that (A) Company shall not be obligated to make any payment under this Paragraph (6) until Employee shall have delivered to the Company a release of all claims in form and substance reasonably satisfactory to Company and the release shall have become effective and irrevocable under all applicable laws (hereinafter the"Release")[.]
>
> * * *
>
> (b) <u>Resignation by Employee</u>. Employee's employment shall be terminated and Employee shall have a Separation of Service on the 30th day following Employee's provision of *written*

(continued...)

B. The Terminations or Purported Terminations

On or about June 10, 2010, Smith sent an e-mail to the TenX's Board of Directors, of which he was also a member, identifying some operational issues but also raising what he considered to be a potentially serious financial accounting issue "where approximately 17 percent of the equity shares had been granted without documentation or explanation." Tr. at 7, 68. In Smith's view, the Board of Directors did not take kindly to his raising the aforementioned accounting issue and, in retaliation for his action, had Moishe Bodner, who was also a member of the Board, send Smith an e-mail, dated

---

[5](...continued)
        *notification* to Company of Employee's intention to resign employment for any lawful reason or for no reason. Upon any such termination pursuant to this Paragraph 6(b), Company shall have no further obligations to Employee (including severance or otherwise) hereunder except to pay Employee's regular salary and benefits up to the date of termination.

  (c)    <u>Termination for Cause</u>. Company may terminate Employee's employment for cause.

* * *

Upon Termination of Employment and Separation from Service of Employee for cause pursuant to this Paragraph 6(c), Company shall have no further obligations to Employee (including severance or otherwise) hereunder except to pay Employee's regular salary and benefits up to the date of termination.

<u>Id</u>. (emphasis added).

July 12, 2010, purportedly terminating his employment for cause.[6]  Tr. 68-70.  The e-mail from Bodner ("Bodner's July e-mail) stated as follows:

> Mr. Gardiner Smith,
> TenX hereby terminates your employment, pursuant to
> Section 6(c) of your 'executive employment agreement,'
> dated Feb.1 [sic], 2010.
> Mo Bodner Ceo TenX

Exhibit QQ.  Bodner listed the "subject" line of the e-mail as "Employment Termination" and copied Amy Tawney, Esquire ("Tawney, Esquire"), who appears to have been TenX's corporate counsel on the e-mail.

In response to Bodner's July e-mail, Smith's lawyer, Ira Rosenberg, Esquire, sent a letter, dated July 13, 2010, to Bodner *(via* e-mail) on Smith's behalf.  See Exhibit M.  In the letter, Rosenberg stated the following: (i) there was no basis for terminating Smith's employment for cause; (ii) Smith was not given notice of any "cause" for terminating him; and (iii) Bodner had no authority to terminate Smith's employment because his employment "may only be terminated pursuant to formal action of the Board of Directors."  Id.  In the letter, Smith's lawyer further stated: "We consider your

---

[6] At the hearing, Smith also read part of his testimony from his deposition into the record.  Tr. at 97-99.  The testimony described a telephone call which he received on or about June 12th from the "putative board."  Id. at 97.  During the phone call, the "putative" Board of Directors terminated three employees, including Sun and Smith.  Id.  According to Smith's testimony, he was terminated "with the proviso that [he] would continue for two months in the transition of the company."  Id.  Whatever happened during this telephone call, no one, including Sun, Smith or TenX proceeded thereafter as if Sun or Smith had been terminated.  Sun never mentioned this supposed termination during her testimony and apparently continued to work and receive her salary from TenX thereafter.  The same occurred with Smith.  Consequently, the Court ruled that this deposition testimony was irrelevant.  Id. at 101-102.

6

e-mail to be invalid and ineffective as a matter of law." Id.; see also Tr. at 77-79. Smith never received a response from TenX to his lawyer's letter. Tr. at 72.

By letter, dated August 9, 2010, seven individuals from the TenX management team (the "Management Team") submitted a two-week notice of their intent to resign from TenX. See Exhibit RD 11. The Management Team, which included TenX's Chief Operating Officer ("COO"), Chia Chia Sun, addressed their letter to the following three individuals: (1) Bodner as TenX's "Interim Chief Executive Officer"; (2) Ashar Nathan as the President of TenX; and (3) Robert Harrow as the Chief Financial Officer of TenX. See Exhibit RD 11. The Management Team identified four specific reasons in the letter for collectively resigning. Two of the reasons were the following: (i) "Lack of consistency and confidence in TenX Biopharma Inc to meet salary and benefit obligations to employees"; and (ii) "Lack of confidence in the interim CEO, CFO and President of TenX Biopharma Inc. with respect to leadership, pharmaceutical business experience, transparency and integrity to make TenX Biopharma Inc. a viable and respected biopharmaceutical business." Id. On the second page of the letter, the Management Team identified the terms under which they would agree to rescind their collective resignation, stating as follows:

> Please be aware that we are wiling to collectively rescind our intent to resign should a viable and immediate business solution [arise] that addresses, directly, our reasons to resign. Any viable business solution must include the immediate re-instatement of Gardiner Smith as CEO and immediate removal of Moishe Bodner as Interim Chief Executive Officer and Robert Harrow as Chief Financial

7

>Officer. As continued employees of TenX Biopharma Inc., we are available for further discussion during this two-week period.

Id. (emphasis added).

On August 10, 2010 (one day after the collective intent to resign was submitted), Bodner terminated Sun's employment. Tr. at 36. As a result of the termination, she did not work and never was paid for the seven day period from August 10, 2010 to August 17, 2010. Id. At the Hearing, Debtor's counsel admitted that Sun had been terminated. Tr. at 55. The Court thereupon ruled that TenX had terminated Sun and that she was entitled to Severance in accordance with her Employment Agreement which, for all intents and purposes, is identical to Smith's Employment Agreement.

On August 16, 2010, TenX's Board of Directors held an "Emergency Board Meeting." Exhibit UU. Four Board Members attended the meeting, namely Bodner, Smith, Asher Nathan ("Nathan") and David Saurymper ("Saurymper"). Id. Tawney, Esquire, "attended the meeting as corporate counsel." Id. According to the minutes of the meeting, Bodner made a motion at the meeting to adopt, *inter alia*, the following resolutions:

> (A)  Gardiner Smith shall be reinstated as Chief Executive Officer of TenX, with pay from August 1-15. Gardiner will receive an incentive of 1 month pay plus 20% upon closing of the sale of TenX;

8

        (B)       Gardiner Smith shall have the authority to make payroll ongoing from Company funds. Gardiner Smith shall have the authority to <u>reinstate</u> Chia Chia Sun and Jim Meyer; ....

Id. (emphasis added). The motion was seconded by Smith and unanimously adopted. Id. While not explicitly stated at the hearing, it is apparent that Sun was rehired by TenX on August 17, 2011, as a result of this emergency meeting of the Board of Directors. See Tr. at 55 (Debtor's counsel admitted that Sun was re-hired by TenX).

      On October 15, 2010, an Involuntary Petition under Chapter 11 of the Bankruptcy Code was filed against the TenX. Docket Entry No. 1. Smith was not one of the original petitioning creditors, but he joined in the involuntary bankruptcy filing around the end of October of 2010. Tr. at 24.

      On November 10, 2010, the petitioning creditors filed a motion seeking the appointment of a trustee and an emergency hearing regarding its motion. See Docket Entry No. 55. The very next day, which was November 11, 2010, Bodner sent an another email to Smith terminating his employment. In this e-mail ("Bodner's November e-mail"), he stated: "Please take note that effective immediately your employment at TenX is terminated." Exhibit AA; Tr. at 81. The signature line on Bodner's November e-mail identifies Bodner as the Chairman of TenX. Exhibit AA. Notably, the e-mail does not refer to any provision of Smith's Employment Agreement or state any cause for Smith's termination. Id. After receiving the termination notice from Bodner, Smith never delivered a release of claims to TenX. Tr. at 10.

9

Thereafter, the Debtor responded to the petitioning creditors' Motion to Appoint a Trustee and for an Emergency Hearing by filing its Objection to Appointment of Trustee. See Docket Entry No. 58.  In the objection, the Debtor declared at least three times that it had terminated Smith, stating as follows:

> 1. . . . (b) The appointment of a Trustee to resolve Petitioners' manufactured corporate governance dispute is not appropriate or necessary.  The alleged dispute among the Debtor's directors ended with meetings of the Debtor's board pursuant to which <u>the Debtor's CEO was ultimately terminated</u> in order to facilitate the potential sale of the Debtor's assets to a well-financed biotech industry leader[.]
>
> (c) The Motion is being interposed by a group organized by the <u>Debtor's now terminated CEO</u> to obstruct the board's decision to sell to any potential buyer except the terminated CEO's preferred buyer – a poorly capitalized company that, upon information and belief, has promised a sweetheart deal <u>to the terminated CEO</u>.
>
> 14.  As a result of this divergence of views and the Board's concern that Mr. Smith could not be relied upon to faithfully carry out his duties to the corporation and its shareholders, <u>on October 13, 2010, the Board, through propor corporate action, sharply curtailed the scope of Mr. Smith's authority as CEO.</u>  Two days later, the Petitioners, who[m] the Debtor believes were solicited and organized by Mr. Smith, retaliated with the filing of the involuntary petition.  <u>Ultimately, the Debtor terminated Mr. Smith's employment altogether.</u>

Objection to the Appointment of a Trustee at ¶¶ 1(b); 1(c) & 14, .

The hearing on the motion for the appointment of a trustee and emergency hearing was scheduled for November 17. 2010; however, the motion was settled.  The parties submitted a stipulated Order for the Court's approval. On December 1, 2010, the Court issued the stipulated Order ("Stipulated Order"): (i) identifying Smith as the

10

Chief Executive Officer of TenX; (ii) identifying Smith and Sun as the Current Management of the Debtor; (iii) stating that Smith and Sun would continue operating and managing the Debtor's day-to-day operations; and (iv) identifying Bodner, Saurymper, Nathan and Smith as the Debtor's Board of Directors.  See Docket Entry No. 86.

At the Hearing, Smith testified that, following the natural expiration of his Employment Agreement, he continued to act as the CEO of the Debtor, outside of the scope of his Employment Agreement, pursuant to the Court's Stipulated Order.  See Tr. at 22-23.

During the Hearing, the Court observed that it was quite apparent that there had been significant discord between Bodner and Smith, and that Bodner had repeatedly attempted to terminate Smith.  See Tr. At 102. The Court further observed that the Management Team believed that Smith had been terminated in July; however, the Court was not convinced that Smith believed that he had been terminated or at least validly terminated.  In any event, Smith was reinstated to his position by Board of Director's resolution on August 16, 2010.

The Court similarly concluded that Smith considered his termination on November 11, 2010 to be "ineffective."  For that reason, the Court orally rejected Smith's contention that he had been actually terminated but decided to take the matter under advisement to consider the issue of whether Smith had been constructively terminated by TenX's non-payment of his wages.

At no time during the Hearing did TenX's counsel ever advise the Court that TenX had previously taken the position and acknowledged in a document which was signed by its counsel and filed in its bankruptcy case that it had terminated Smith.

**DISCUSSION**

## I. JUDICIAL ESTOPPEL

In the words of the Third Circuit Court of Appeals, "[j]udicial estoppel is a 'judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [it] has previously asserted in the same or a previous proceeding.' The doctrine exists 'to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment.'" MacFarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272 (3d Cir. 2012). While there is no "rigid test" for judicial estoppel, federal courts consider the following three factors in determining whether the doctrine should be applied:

> (1) whether the two positions irreconcilably inconsistent?;
>
> (2) whether the party change its position in bad faith?; and
>
> (3) whether the doctrine must be applied to avoid a miscarriage of justice?

In re Kane, 628 F.3d 631, 638 (3d Cir. 2010). All three of these factors are applicable here. First, the Debtor's unequivocal statements in its Objection to Appointment of Trustee that it had terminated Smith are irreconcilably inconsistent with its assertion in the instant dispute that it never terminated Smith. Second, the Debtor's statements in

12

its Objection to Appointment of Trustee that Smith was terminated were made for the purpose of trying to distance itself from Smith in an effort to convince the Court to deny the Motion for the Appointment of a Trustee.  Since that position is against the Debtor's interest in the instant dispute, the Debtor has done an about-face and is now asserting the directly contrary position that it never terminated Smith to evade its obligation to pay Smith Severance.  Obviously, the Debtor's change of position is in bad faith. Third, absent application of the doctrine of judicial estoppel, the Debtor will not only gain an unfair advantage over Smith but it will get away with misleading and misinforming this Court and a miscarriage of justice will occur.

## II.  REVIEW OF HEARING TRANSCRIPT

Based upon this Court's review of the Hearing transcript, it also concludes that, even absent application of the doctrine of judicial estoppel, Smith is entitled to Severance pursuant to the terms of his Employment Agreement. The November 11th email from Boder explicitly terminated Smith without any cause.  Accordingly, Smith was terminated without cause which entitles him to Severance under paragraph 6(a) of his Employment Agreement.

At the Hearing, Smith specifically stated that, after receiving the email from Bodner, he continued working as the Chief Executive Officer of TenX "under the guidance of the Court" and pursuant to the Stipulated Order which was entered by the Court on December 1, 2010.  Tr. at 21-22, 86.  Insofar as Smith's deposition testimony which was read into the record at the Hearing, this Court is persuaded, upon reviewing

13

the testimony, that it is irrelevant. Id. at 88-90. While Smith testified at the deposition that he considered the termination to be invalid for several reasons, his personal subjective belief does not render the termination invalid. Moreover, Smith testified at the Hearing that he "didn't know what was valid. We were in a very complicated court case." Id. at 87. Furthermore, while Smith's legal counsel sent a letter to Bodner in connection with TenX's purported termination of Smith in July of 2010, stating that they considered Bodner's July email to be ineffective as a matter of law, no such letter was sent following Smith's termination in November of 2010. Consequently, this Court holds that Smith was terminated by TenX without cause on November 11, 2010, and that Smith served thereafter as the CEO of TenX as a result of the parties' Stipulated Order as he testified at the Hearing.

### III.  RELEASE OF CLAIMS

Smith's Employment Agreement obligated him to sign and deliver a release of claims to TenX. This Court previously ruled, based on the same contractual language in the Employment Agreement between TenX and Chia Chia Sun, who is TenX's former Chief Operating Officer ("COO"), that, due to the ambiguity of the contract language, the Debtor was obligated to provide a release of claims form to Sun for her to sign and deliver to TenX. Tr. at 56. This ruling was affirmed on appeal. See In re TenX Biopharma, Inc., 2012 WL 3562406, at *8-*10 (E.D. Pa. August 20, 2012). While this Court indicated at the Hearing that it would rule differently on the same issue with regard to Smith because he is a lawyer, see Tr. at 121, the Court's review of this matter

14

has convinced it otherwise. While Smith attended law school and was trained as a patent lawyer, he was not a practicing attorney. Id. at 86. He was an "operational executive" and, therefore, in a similar position as Sun who was the COO of TenX. Id. Consequently, Smith shall not be held to any higher standard than Sun. Therefore, just like the Court ruled with regard to Sun, Smith's "failure to 'deliver' a release of claims to TenX" does not bar him from recovering Severance under the identical language in his Employment Agreement. See In re TenX Biopharma, Inc., 2012 WL 3562406, at *10.

In the event the Debtor wants Smith to sign a release of claims form, it shall provide the form to Smith for his signature. The form shall be the same or similar to the form provided to Sun. In the event no such form is provided to Smith, then he shall be excused from his obligation under the Employment Agreement to deliver a release of claims to TenX.

## IV. AMOUNT OF SEVERANCE PAY

According to paragraph 6(a)(i) of Smith's Employment Agreement, TenX's obligation to pay severance to Smith equal to one year of his salary is reduced to six months of his salary "if the Employee accepts full time employment subsequent to such termination[.]" See Employment Agreement ¶ 6(a)(i). In Chia Chia Sun's situation, she was rehired by TenX seven days after her termination so her Severance was reduced to six months of pay. Similarly, Smith was reinstated or approved as TenX's CEO pursuant to the Stipulated Order. Therefore, the amount of Severance to which Smith is entitled is six months of his salary ($125,000).

**SUMMARY**

For the reasons stated above, Smith is entitled to Severance in the amount of $125,000. Consequently, the Omnibus Objection shall be granted in part and denied in part insofar as the contention that Smith is not entitled to Severance.

_____
Honorable Jean K. FitzSimon
United States Bankruptcy Judge

Date: September 21, 2012